HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PERFECT COMPANY,

        Plaintiff,

v.

ADAPTICS LIMITED,

        Defendant.

CASE NO. C14-5976RBL

**AMENDED**[1] *MARKMAN* CLAIMS CONSTRUCTION

THIS MATTER is before the Court following a claims construction hearing pursuant to *Markman v. Westview Instruments, Inc*. 517 U.S. 370 (1996). The parties seek construction of six claims of United States Patent No. 8,829,365 (the '365 patent). The Court has reviewed all of the materials presented, and heard expert testimony and argument of counsel.

## I. LEGAL STANDARD

Claim construction is a matter of law for the court. *Markman v. Westview Instruments, Inc*. 517 U.S. 370 (1996). The claims of the patent establish and limit the patentee's right to exclude by "describing the outer boundaries of the invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27 n. 4 (1997). In construing the language of a claim, the

---

[1] This Order corrects a typographical error at page 9 lines 8-10.

court primarily focuses on so-called "intrinsic evidence" which is comprised of the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Specifically, the court first looks to the words of the claims themselves, both asserted and non-asserted, to define the scope of the patented invention. The ordinary and customary meaning of a term is defined by a person of ordinary skill in the art (PHOSITA) at the time of the invention. *Id*. The context in which a term is used can be "highly instructive" in resolving the meaning of the term. *Id*. at 1314. For example, if a claim has the term "steel baffle," it strongly implies that the term "baffle" does not inherently include objects made of steel. *Id*. Other claims in a patent may also provide valuable contextual cues for deciphering the meaning of a term. *Id*. If a limitation is present in a dependent claim, then there is a presumption that the limitation is not present in the parent claim. *Id*. at 1314-15.

The court then reviews the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication[.] Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term. *Id*.

The prosecution history of a patent is the last piece of intrinsic evidence that a court should consider when construing the claims of the patent. *Id*. at 1317. The prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Id*. A court, however, should be aware that the prosecution history represents the ongoing negotiation between the PTO and the applicant, rather than the final product. *Id*. As such, the prosecution history may lack the clarity of the specification and may

not be as useful for claim construction purposes. *Id*. In certain instances, however, the prosecution history may provide guidance of an applicant's intent to specifically limit the scope of a given claim term. *Id*.

Extrinsic evidence is the last category of evidence a court may consider when construing patent claims. *Id*. Such extrinsic evidence includes expert and inventor testimony, dictionaries, and learned treatises. *Id*. On its own, extrinsic evidence is unlikely to be reliable in guiding the court's claim construction. *Id*. at 1319. Instead, extrinsic evidence should be considered in the context of the intrinsic evidence. *Id*. A court may also use extrinsic evidence to determine how a person of ordinary skill in the art would understand the claimed invention. *Id*. It is the Court's duty to resolve fundamental disputes among the parties as to the scope of a claim term, but it is not the Court's duty to construe every claim term, or to repeat or restate every claim term. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *02 Micro Int'l Ltd. v. Beyond Innovation Tech Corp.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*See Phillips v. AWH Corp.,* 415 F. 3d 1303, 1312 (Fed. Cir. 2005).

## II. DISPUTED TERMS

As an initial matter, the Court notes that the arguments made in the plaintiff's opening claims construction brief were made to the USPTO on re-examination of the '365 patent. As Perfect Co. emphasizes, the examiner confirmed all of the claims as issued:

Original claims 5, 8, 10, 14, 16, 18-20, 23-25, 27, 29, are patentable and new claims 30-34 are allowable.

Independent claims 5 and 14 are patentable because the prior art of record did not disclose or fairly teach the following claim limitation;

displaying on the display a <u>real-time progress</u> of the first ingredient being added to the scale by displaying a first portion of the first recipe block in a different manner than a second portion of the first recipe block, <u>wherein a ratio of the first portion of the first recipe block displayed to the second portion of the first recipe block displayed is changed in real-time and is proportional to a ratio of the real-time measured amount of the first ingredient compared to the target amount for the first ingredient</u>.

Dkt 128-1, *Decision on Reexamination,* dated July 5, 2017, page 2 (emphasis in original).

Perfect Co. correctly argues that this determination is strong support for its claims construction, and for its argument that the claims are not indefinite.

The parties' primary dispute is over the term "real time" in the '365 patent. The Court's construction of disputed terms follows.

A. "Real time"

The term "real time" appears in claims 5, 14, and 23. The parties' competing constructions are accurately summarized in Perfect Co.'s opening brief:

| Claim Language | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| **real-time**<br>5, 14, 23 | Relating to a system in which input data is processed within milliseconds so that it is available virtually immediately as feedback. | Indefinite; alternately, "without intentional delay, given the processing limitations of the system and the time required to accurately measure the data"; alternately, "within 100 ms of an ingredient being placed on the scale." |

[Dkt. #142 at 12]

Perfect Co. argues for a common sense construction reflecting the need for "virtually immediate" feedback, consistent with the overall purpose of the patent—to provide visual feedback to prevent over pouring ingredients. Its expert, Howell, advocates for such a

construction, which also finds support from the Oxford Dictionary definition of the term. Adaptics has not supplied evidence of how a PHOSITA would interpret the claim.

Adaptics argues primarily that Perfect Co. told the USPTO that "real time" meant "within 100 milliseconds" when the '365 patent was recently reexamined. Perfect Co. denies this, and demonstrates that they did not so limit their claim. Adaptics also argues that the term is indefinite, because there is no upper limit.

The term is not indefinite, and it does not include a specific limit of 100 ms. Perfect Co.'s construction is correct, and the Court will construe the term "real time" in the '365 patent to mean "Relating to a system in which input data is processed within milliseconds so that it is available virtually immediately as feedback."

This construction has the practical effect of resolving other disputes, below.

**B. Means-plus-function limitations**

Adaptics also attacks the '365 patent arguing that many of its claims are are "means-plus-function" claims under §112 Paragraph 6, and that they cover only a corresponding structure, which does not exist in the '365 patient. It relies on *Aristocrat Techs Austl. Pty Ltd. v Int'l Game Tech*, 521 F.3d 1328 (Fed. Cir. 2008). Perfect Co. points out that Adaptics' "literal" *Aristocrat* quote does not exist, and that its arguments do not overcome the presumption that claim terms not using the word "means" fall outside §112.

The Court agrees, for all of the reasons articulated in Perfect Co.'s briefing and oral argument, and on the testimony of its PHOSITA. The claims are not means-plus-function claims and the lack of a corresponding structure is not fatal to them.

**C. "Proportional to a ratio"**

The parties also dispute the term "proportional to a ratio" in claims 5 and 14 in the '365 patent. Perfect Co. urges a common sense construction based on the dictionary and scientific

definitions of the term "proportion;" meaning that a change in one variable results in a predictable change in the other. It points out that there are four sorts of proportionality: direct, inverse, exponential and logarithmic. Adaptics argues that only a directly proportional ratio makes sense in the context of this invention. Perfect Co. opposes a construction limited to direct proportionality only:

| Claim Language | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "[*displaying on the display a / the computing device causing the electronic display to display*] real-time progress of the first ingredient being added to the scale displaying a first portion of the first recipe block in a different manner than a second portion of the first recipe block, wherein a ratio of the first portion of the first recipe block displayed to the second portion of the first recipe block displayed is changed in real-time and is **proportional to a ratio** of the real-time measured amount of the first ingredient compared to the target amount for the first ingredient" [5/14] | This phrase needs no further construction than the ordinary meaning of its constituent words and the construction for "real-time," "recipe block," "first recipe block;" given herein, and "proportional" stated herein below.<br><br>"Proportional": A mathematical relationship in which a change in a first variable is accompanied by a monotonic change in a second variable. | Indefinite; unsupported means-plus-function limitation<br><br>Alternatively, "proportional to a ratio of the real-time measured amount . . . compared to the target amount . . ." means "proportional to the ratio of the real-time measured weight ("wr") and the target weight (wt), expressed as the ratio wr/wt" |

[Dkt. # 142 at 15]

Perfect Co. argues, persuasively, that defining "ratio" does not add to the construction of "Proportional." It also argues that Adaptics essentially advocates for replacing the term "proportional" with the word "equal," which finds no support. It also argues that it is improper to limit the scope of a claim to the preferred embodiment. *See Ventana Medical Systems, Inc. v. Biogenex Laboratories, Inc.*, 473 F.3d 1171 (Fed. Cir. 2006).

The Court agrees and will construe the term as Perfect Co. advocates, using its commonly understood meaning, and the meaning it has to a PHOSITA. "Proportional": A mathematical

relationship in which a change in a first variable is accompanied by a monotonic change in a second variable. It is not limited to direct proportionality.

**D. "Real time information"**

Perfect Co. argues that in light of the Court's construction of "real time," above, the phrase "real time information" (in claims 5 and 14) needs no further construction. Adaptics argues that the term is indefinite and is an unsupported means plus function limitation. The latter issues is resolved above. The term needs no construction given the Court's construction of "real time."

**E. "An amount added to the scale"**

Perfect Co. argues that in light of the Court's construction of "real time," above, the phrase "an amount added to the scale" (in claims 5 and 14) needs no further construction. Adaptics argues that the term is indefinite and is an unsupported means plus function limitation. The latter issue is resolved above, and the term is not indefinite

Adaptics' alternate, more precise and restrictive construction— "an amount added to the scale, calculated based on, and stored as a distinct variable from, the real-time information received from the scale"—finds no support in the '365 patent, and is not supported by a PHOSITA. The Court agrees that proposed construction is unnecessarily limiting, and will not construe the term as Adaptics advocates. The term needs no construction given the Court's construction of "real time."

**F. "Determining a *real-time Measured amount* of the first ingredient based on the amount added to the scale"**

Perfect Co. argues that in light of the Court's construction of "real time," above, the phrase "determining a real-time measured *amount* of the first ingredient based on the amount added to the scale" (in claims 5 and 14) needs no further construction. Adaptics argues that the

term is indefinite and is an unsupported means plus function limitation. The latter issue is resolved above, and the term is not indefinite.

| Claim Language | Plaintiff's Construction | Defendant's Construction |
| --- | --- | --- |
| "[the computing device] determining a real-time measured amount of the first ingredient based on the amount added to the scale"<br>5, [14] | This phrase needs no further construction than the ordinary meaning of its constituent words and the construction for "real-time" given herein. | Indefinite; unsupported means-plus-function limitation<br><br>"a measured amount representing the real-time weight on the scale, calculated based on, and stored as a distinct variable from, the amount added to the scale"; using "real-time" definition proposed above |

[Dkt. #142]

Adaptics' alternate construction of the term is again unnecessarily limiting, and is not supported by the specification or by a PHOSITA. The term needs no construction given the Court's construction of "real time."

**G. "Recipe block"**

The parties' competing constructions of the frequent term "recipe block" (the visual representation of a recipe step) are not dramatically different. The point of contention is whether the GUI-displayed block must be smaller in size than the useable area of the device screen [Perfect Co.], or whether it can instead take up the entire screen or display [Adaptics]:

| Claim Language | Plaintiff's Construction | Defendant's Construction |
| --- | --- | --- |
| **"recipe block"**<br>5, 8, 14, 16, 18, 19, 20, 27, 29 | A discrete GUI element, smaller in size than the useable area of the device screen, associated with adding an ingredient or action step. | "A block-shaped GUI element representing a step in a recipe" |

[Dkt. #142]

Perfect Co. argues that numerous figures and references to the term in the '365 patent demonstrate that its construction is correct. It argues that in the patent's Figures, recipe blocks are "always shown as a sub-area of the entire display and always demarked from the portion of

1 the display not displaying the recipe block. *See particularly* Figure 7. It also relies on its
2 PHOSITA's testimony that that the term refers to a discrete GUI element, smaller than the
3 useable area of the screen.

4 Adaptics argues the while Figures happen to show such blocks, that is not a basis for
5 inserting that limitation into the claim.

6 This is the closest of the disputed terms (but not the one that garnered the most argument
7 or evidence). The weight of the PHOSITA's testimony on the topic, the Figures, and ultimately
8 common sense lead the Court to construe the term as Perfect Co. advocates: A discrete GUI
9 element, smaller in size than the useable area of the device screen, associated with adding an
10 ingredient or action step.

11 <center>***</center>

12 Therefore, the Court construes the disputed terms of the '365 patent as set forth above.
13 IT IS SO ORDERED.
14 Dated this 2nd day of November, 2017.

_Ronald B. Leighton_
Ronald B. Leighton
United States District Judge