HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PERFECT COMPANY,

           Plaintiff,

    v.

ADAPTICS LIMITED,

           Defendant.

CASE NO. 3:14-CV-05976-RBL

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY

THIS MATTER is before the Court on Plaintiff Perfect Company's Motion to Compel discovery from Adaptics Limited. Perfect's requests break down into the following categories:

**1.    Drop Scale and Recipe App Firmware and Source Code Inspection**

Perfect asserts that Adaptics has not produced the source code for versions of its app after 1.10.0 and has significantly limited the ability of Perfect's expert to inspect the newer versions. Perfect also claims that Adaptics' expert had far greater access and freedom of inspection. Perfect asks that this imbalance be remedied by providing its expert with "an unrestricted PC running windows along with software tools and interface hardware for compiling code and firmware, installing compiled firmware on a scale and executing performance tests on the Drop Scale using each firmware version and the code, . . . [and] a web browser connected to the

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO COMPEL
DISCOVERY - 1

internet so technical documents on the processor may be reviewed." Motion, Dkt. #252, at 3. Perfect also asks that its expert be allowed to work unsupervised at his place of business. *Id.*

Adaptics responds that the only dispute related to these later versions is whether the Drop Scale and Recipe App operate in "real time," which only requires examining the Drop Scale firmware and not the Recipe App software. Adaptics also asserts that the waiver requested by Perfect, which would deprive Adaptics of the ability "to assert non-infringement of any version of the on [sic] the basis of any version of code after v. 1.10.0," would require Adaptics to waive its already-raised defenses as well as any future defenses. Instead, Adaptics has offered a different, narrower stipulation that it claims would eliminate the need for source code review. Adaptics also argues that the source code inspection that Perfect describes as "unduly burdensome" is actually in keeping with the protective order, which the Court ordered enforced. Dkt. #126 at 2.

Rather than dissect all of Adaptics' technical arguments about why the Recipe App source code is or is not relevant, the Court sees no reason why Adaptics cannot simply make that code accessible to Perfect for inspection if it believes it could be the basis of some defense asserted by Adaptics. Adaptics' unwillingness to agree to Perfect's proposed stipulation that the v. 1.10 source code is representative of all later versions supports this conclusion. *See* Opp'n, Dkt. #279, at 4. Therefore, Adaptics shall make that code available for inspection. As for the restrictions placed on Perfect's expert, the Protective Order specifically states that inspection shall take place "at an office of the Producing Party's counsel located in the Western District of Washington" on a "secured computer in a secured room without Internet access" and allows for visual monitoring. Dkt. #60. However, it says nothing about what tools shall be available to the expert upon inspection. Consequently, besides the explicit limitations in the Protective Order,

Adaptics is ordered to provide Perfect's expert with the same tools and access their own expert has, including Microsoft Visual Studio, to inspect the source code and firmware for all version of the Recipe App and Drop Scale within 30 days. *See* Reply, Dkt. #284, at 1.

**2.      Summary of Differences in Versions**

The Court agrees with Perfect's argument that describing the non-trivial differences between the 30 versions should not be overly burdensome for Adaptics. Simply referring Perfect to the Apple App Store is not an adequate response. The Court therefore orders Adaptics to respond more fully to 2017-ROG 1 and 2014-ROG 13 and 25 within 30 days.

**3.      Software Development Records including Commits**

Unless the parties can reach a stipulation satisfying to both sides, Perfect is entitled to the detailed versions of the software commits, if they exist. To the extent possible, Adaptics may exclude "draft" commits that are not present in the actual product. Adaptics is ordered to produce these documents within 30 days.

**4.      Adaptics' Accounting Database**

The Court is sympathetic to Adaptics' argument that it should not need to produce its entire accounting database, including confidential and irrelevant information such as "revenues from non-accused products, employee salaries, tax payments, . . . investor contributions, . . . [and] utility and rent payments." Opp'n, Dkt. #279, at 9. The Court agrees that excising this information from Adaptics' entire database would likely be burdensome, and that the information Adaptics has produced regarding sales, profits, and revenue appears sufficient to analyze damages under the factors from *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). To the extent that Perfect requests specific data from

Adaptics that is relevant to damages, Adaptics should comply with those requests. However, Adaptics is not obligated to produce its entire accounting database.

**5.  Adaptics' Foreign Sales and Revenue**

The parties bicker both over whether Perfect pled a claim under § 271(f), which would be necessary to collect damages for foreign sales, and whether a "substantial component of the infringing product came 'in or from' the United States." Motion, Dkt. #252, at 7. As to the first issue, it appears that Perfect did in fact allege infringement under § 271(f) in 2015 and 2017. *See* Dkt. #92-5, 282-4. As to the second, the Court will not decide this issue on a motion to compel. At this point, Adaptics is ordered to produce its foreign sales and revenue information as requested by Perfect within 30 days.

**6.  Documents between Adaptics and Drop Kitchen, Inc.**

The Court agrees with Adaptics' argument that Perfect has not identified why documents related to the transaction between Adaptics and Drop Kitchen, Inc. are relevant to this action, in which Perfect sued Adaptics. As a result, that request is denied.

**7.  Documents related to Investors and/or Partners**

The Court also agrees with Adaptics that Perfect has not articulated a reason why its requests related to investments in Drop Kitchen, Inc. or references to outstanding lawsuits is relevant. These requests are therefore denied.

IT IS SO ORDERED.

Dated this 26th day of November, 2018.

Ronald B. Leighton
United States District Judge